UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TENNESSEE CVS PHARMACY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCP 2001 A-CSF-76 LLC,<br>GCC KINGSPORT, LLC,<br>GCC REALTY COMPANY, LLC,<br>ACLCP KINGSPORT, LLC,<br>ALLERAND REALTY HOLDINGS, LLC,<br>RICHARD J. SABELLA, and<br>PHILIP KASSOVER,<br><br>Defendants. | ) | No.: 2:24-cv-16-TAV-CRW |

**MEMORANDUM OPINION & ORDER**

This civil action is before the Court on plaintiff's Motion for Leave to Deposit Monthly Interpleader Funds [Doc. 8]. All defendants except defendant Philip Kassover (altogether the "Allerand Defendants") have filed a response in opposition [Doc. 41]. Plaintiff did not file a reply, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the motion [Doc. 8] is **GRANTED**.

**I. Background**

This interpleader action concerns plaintiff's lease of property in Kingsport, Tennessee pursuant to the terms of a lease agreement (the "Lease") with defendant SCP 2001 A-CSF-76 LLC ("SCP") [Doc. 1 ¶ 11; Doc. 9, p. 1]. The initial Lease term ran from December 2001 to January 31, 2024 [Doc. 1 ¶ 12]. Plaintiff made monthly rent payments to SCP's lender until 2012, when plaintiff made a lump sum payment to SCP's lender for

the remaining rental payments owed under the initial Lease term [*Id.* ¶¶ 18–19]. As a result, plaintiff has not paid rent since 2012 [*Id.* ¶¶ 19–20].

In July 2023, plaintiff exercised its right to renew the Lease for an additional five years [*Id.* ¶ 14]. The renewed Lease term commenced on February 1, 2024, and runs through January 31, 2029, with rent payments in the amount of $21,173.95 due each month [*Id.* ¶ 15; Doc. 9, p. 3].

With the first rent payment due on February 1, 2024, plaintiff alleges there is a dispute among defendants regarding who is legally entitled to the monthly rent payments, and, as a result, plaintiff does not know to whom it should pay [Doc. 1 ¶¶ 23, 31; Doc. 9, p. 3]. According to plaintiff, defendants Sabella and Kassover and/or their respective counsel and/or other entities have sent notices to plaintiff disputing each other's entitlement to the monthly rental payments and instructing plaintiff to direct rental payments to them and/or entities they control [Doc. 9, p. 5]. Specifically, in 2003, defendant Sabella advised plaintiff to send all notices, demands, requests, and other communications directed to SCP to GCC Kingsport, LLC [Doc. 1 ¶ 24; Doc. 1-5]. In August 2020, counsel for defendant Kassover informed plaintiff that defendant Kassover was the "attorney-in-fact" of defendant GCC Realty Company, LLC, and instructed plaintiff to send all notices under the Lease to defendant Kassover's counsel [Doc. 1 ¶ 25; Doc. 1-6].

In 2023 and 2024, when plaintiff attempted to clarify to whom the rental payments were owed, only defendant Sabella responded and told plaintiff to make its rental payments

to defendant ACLCP Kingsport, LLC ("ACLCP") and disregard defendant Kassover's claim [Doc. 1 ¶¶ 28–30; Doc. 1-8]. In investigating the matter, plaintiff further notes that it learned of other litigation involving the Allerand Defendants and defendant Kassover, including disputes as to who is the rightful owner of SCP and other defendant entities and the rightful recipient of rental payment for various properties [Doc. 1 ¶ 27].

Plaintiff filed its interpleader complaint pursuant to 28 U.S.C. § 1335 on January 31, 2024 [*see* Doc. 1]. In light of the above factual allegations, plaintiff claims it is ready, willing, and able to pay its monthly rental payments under the Lease, but defendants have made conflicting and adverse claims to the rent payments [*Id.* at 8]. Accordingly, plaintiff contends that it is exposed to potential multiple liabilities absent clarity as to who is the rightful payee [*Id.*].

On March 22, 2024, plaintiff filed an application for clerk's default and motion for default judgment as to defendant Kassover, who, at the time, had not timely filed a responsive pleading or sought an extension of time to respond to the complaint [Docs. 34, 35]. After the Court granted their motion for an extension of time to file a responsive pleading [Doc. 33], the Allerand Defendants filed an answer on March 23, 2024 [Doc. 38]. Therein, they claim there is no good faith dispute as who is entitled to the rent payments, which the Allerand Defendants believe are owed to ACLCP [*see, e.g.*, *id.* at 8].

Defendant Kassover, appearing pro se in this matter, filed an untimely answer on April 11, 2024 [Doc. 39]. Unlike the Allerand Defendants, he admits there is a dispute

among himself and the Allerand Defendants about who is legally entitled to receive rent payments from plaintiff under the Lease [*see, e.g.*, *id.* at 13].

On April 16, 2024, the Allerand Defendants filed a response in opposition to plaintiff's motion [Doc. 41], in which they "vehemently deny that there is any dispute" about to whom the rent payments are owed. As grounds for denying plaintiff's motion, the Allerand Defendants believed that the interpleader dispute had been resolved because defendant Kassover failed to timely file a responsive pleading and was in default [*Id.* at 1–2]. They also filed a motion to stay [Doc. 44] pending the Court's resolution of their motion for default judgment [Doc. 45] against defendant Kassover.

On May 2, 2024, the Court denied the motions for default judgment as premature and the motion to stay [Doc. 51]. On May 6, 2024, the Clerk denied plaintiff's application for clerk's entry of default as to defendant Kassover [Doc. 52], noting that defendant Kassover had since entered an appearance and filed a responsive pleading in this matter.

## II. Interpleader

Plaintiff filed this interpleader complaint under 28 U.S.C. § 1335 ("Section 1335") [Doc. 1 ¶ 8], which is commonly known as statutory interpleader [Doc. 1]. "Interpleader is an equitable proceeding that affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *United States v. High Tech. Prods.*, 497 F.3d 637, 641 (6th Cir. 2007) (quotations and citation omitted). The purpose of interpleader is to protect a stakeholder "who seeks to avoid determining at

its peril which of several claimants has the superior claim to a fund, as well as the vexation and expense of multiple suits." *State Farm Mut. Auto. Ins. Co. v. Brewer*, 778 F. Supp. 925, 929 (E.D. Ky. 1991). Interpleader actions are remedial in nature and should be liberally construed. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967).

Under Section 1335, district courts have original jurisdiction over interpleader actions that meet the statute's jurisdictional requirements. *See* 28 U.S.C. § 1335(a). This means that a party seeking interpleader must allege: "(1) the existence of actual or potential conflicting claims to a limited fund or property held by the stakeholder; (2) an amount in controversy of at least $500; and (3) minimal diversity among the competing claimants." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 356 (6th Cir. 2018) (internal citations omitted). A party can satisfy the statute's requirements by "properly pleading" them. *See id.*

There are typically two stages to an interpleader. "During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *High Tech. Prods.*, 497 F.3d at 641. "'The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund or property.'" *Id.* at 642 (quotations omitted and brackets removed) (quoting 7 Charles Alan Wright et al., *Fed. Prac. and Proc.* § 1704 (3d ed. 2001)). This does not mean that

the court evaluates the merits of the competing claims during the first stage. *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1240 (E.D. Ky. 2011) ("The Sixth Circuit's requirement of a 'legitimate' fear of overlapping litigation does not imply review of the merits of the adverse claims, which should instead be reserved for the second-stage of interpleader."). Further, "it is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Wright et al., *supra*, at § 1704 (footnote omitted).

The second stage of interpleader involves the resolution of the dispute between the claimants through "normal litigation processes, including pleading, discovery, motions, and trial." *High Tech. Prods.*, 497 F.3d at 641.

This interpleader dispute is currently in the first stage. The Court concludes that plaintiff has satisfied the requirements of Section 1335, as (1) the disputed funds are greater than $500; (2) there is minimal diversity of citizenship among defendants; and (3) plaintiff now seeks to deposit monthly rental payments into the Court's registry.

Plaintiff also has presented evidence of conflict among the Allerand Defendants and defendant Kassover over to whom the rental payments are owed. The Allerand Defendants contend that monthly rental payments under the Lease are owed to ACLCP [Doc. 1 ¶ 24, 30; Doc. 1-8]. Meanwhile, defendant Kassover maintains that payment is due to him by way of his alleged claimed interest in GCC Realty Company, LLC as "attorney in fact" [Doc. 1 ¶ 25; Doc. 1-6]. Likewise, in his responsive pleading, defendant Kassover agrees

that interpleader is proper here because there are multiple adverse claims to the rental payments under the Lease [*see, e.g.*, Doc. 39, p. 16].

In holding that Section 1335's adversity requirement is satisfied, the Court recognizes the Allerand Defendants' position that interpleader is inappropriate here because defendant Kassover lacks any good faith claim to the rental payments under the Lease [*see* Doc. 38].[1] But, to evaluate their contention necessarily requires the Court to delve into the merits of defendants' claims to the rental payments, which, at this juncture, is improper. *See Mudd*, 786 F. Supp. 2d at 1240; *see also USAA Life Ins. Co., Inc. v. Space*, No. 3:14-CV-00661, 2015 WL 3407323, at *2 (W.D. Ky. May 26, 2015) ("The requirement of a 'legitimate' fear of such litigation does not suggest that the Court must review the merits of the claims; this task is left for the second stage of the action."). What is relevant during the first stage of interpleader is whether "multiple claimants raise competing claims for the same identifiable stake." *See Metro. Life Ins. Co. v. Oswalt*, No. 220CV02634TLPATC, 2021 WL 312720, at *4 (W.D. Tenn. Jan. 29, 2021) (internal quotations omitted) (quoting *Space*, 2015 WL 3407323, at *2). Here, the Allerand Defendants and defendant Kassover have raised competing claims for the same identifiable stake—i.e., the rental payments. Accordingly, the Court concludes plaintiff has properly

[1] As grounds for denying plaintiff's motion, the Allerand Defendants primarily relied on their belief at the time that defendant Kassover was in default and that the interpleader dispute therefore was resolved [Doc. 41]. But the Clerk denied plaintiff's application for default in light of defendant Kassover's belated filing of a responsive pleading [Doc. 52]. Accordingly, the Allerand Defendants' argument is now moot. Aside from their vehement denial that any dispute exists as to whom the rental payments are owed [Doc. 41], the Allerand Defendants did not submit further argument opposing plaintiff's motion.

pleaded the existence of competing claims to the rent payments under the renewed Lease term. *See id.*

To the extent that the Allerand Defendants may attempt to contend that plaintiff could have resolved the dispute with "minimum . . . investigation and diligence" and "confirm[ed] [that defendant Kassover's] claims are meritless" [Doc. 1-8, p. 1], this position is contrary to Sixth Circuit case law. Indeed, several district courts in this circuit have explained that a stakeholder has no duty to investigate the merits of competing claims. *See, e.g.*, *Humana Ins. Co. of Ky. v. O'Neal*, 727 F. App'x 151, 155 (6th Cir. 2018); *see also Jackson Nat'l Life Ins. Co. v. Poole*, No. 3:14-CV-1924, 2015 WL 276632, at *4 (M.D. Tenn. Jan. 22, 2015) ("'There is no requirement in Section 1335 that the party filing a statutory interpleader action perform any kind of investigation, let alone reach a level of investigation or due diligence that satisfied one of the competing claimants.'").

For the reasons above, plaintiff has satisfied its burden of demonstrating subject-matter jurisdiction under Section 1335.

## III. Plaintiff's Motion to Interplead Funds

Having concluded that interpleader is proper, the Court now turns to plaintiff's motion [Doc. 8]. Plaintiff seeks leave to deposit monthly rental payments owed under the Lease in the amount of $21,173.95 into the Court's registry pursuant to Federal Rule of Civil Procedure 67(a) [Doc. 9, p. 6]. Plaintiff also asks the Court to enjoin defendants from taking any action against plaintiff related to the payment of monthly rent under the Lease [*Id.*].

Here, plaintiff asserts no claim to the monthly rental payments that it owes under the terms of the renewed Lease. Further, plaintiff contends that it is ready, willing, and able to pay its rent obligations, but without a ruling from the Court as to the rightful payee, it is exposed to double or multiple liability given defendants' competing claims [Doc. 1, p. 2; Doc. 9, p. 5].

Accordingly, the Court finds that plaintiff is a disinterested stakeholder and has met the requirements for statutory interpleader, as discussed *supra*.[2] The Court will direct plaintiff to deposit its monthly rental payments into the Court's registry. Specifically, plaintiff first shall deposit all rental payments into the Court's registry that are currently due and owing from the commencement of the renewed Lease term on February 1, 2024, to the present day, such that plaintiff is current with its rental obligations. Thereafter, plaintiff is directed to deposit a rental payment each month in the amount of $21,173.95. All deposits shall be made in accordance with the terms of the renewed Lease.

Plaintiff also seeks to enjoin defendants from taking any further action against it related to the payment of monthly rent under the renewed Lease [Doc. 9, p. 6]. "[A] district court may . . . enter its order restraining [claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C.

[2] Section 1335(a)(2) requires that an interpleader plaintiff either deposit the disputed money into the registry of the Court or give bond payable to the Clerk of Court. 28 U.S.C. § 1335(a)(2). In granting plaintiff's request to deposit the monthly lease payments into the Court's registry, plaintiff satisfies this requirement.

§ 2361. Pursuant to 28 U.S.C. § 2361, defendants will be enjoined from instituting or pursuing other actions against plaintiff related to the payment of monthly rent under the Lease.

## IV. Conclusion

In light of the above, plaintiff's motion [Doc. 8] is **GRANTED.** The Court **ORDERS** as follows:

(1) Plaintiff is **DIRECTED** to deposit with the Clerk of Court all monthly rental payments that are due and owing from the commencement of the Lease on February 1, 2024, to the present day, such that plaintiff is current on its rental obligations under the Lease;

(2) Thereafter, plaintiff is **DIRECTED** to deposit the sum of $21,173.95, representing the rental payment each month in accordance with the terms of the Lease, an amount equal to $21,173.95, which constitutes one month's rent under the Lease (the "Monthly Deposit");

(3) All deposits made by plaintiff **SHALL** be in accordance with the terms of the Lease;

(4) The Clerk is **DIRECTED** to deposit all funds deposited by plaintiff, including each Monthly Deposit, into an interest-bearing account until further order from the Court; and

(5) Defendants are **ENJOINED** from taking any action against plaintiff with respect to payments owed under the Lease.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE