UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TENNESSEE CVS PHARMACY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCP 2001 A-CSF-76 LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 2:24-cv-16-TAV-CRW |

**MEMORANDUM OPINION AND ORDER**

This interpleader action is before the Court on a Report and Recommendation ("R&R") issued by United States Magistrate Judge Cynthia R. Wyrick on July 24, 2026 [Doc. 166]. In the R&R, Judge Wyrick recommends that defendant Richard Sabella's motion for partial judgment on the pleadings [Docs. 76, 77] be denied, and that the ACLCP Defendants'[1] motion for summary judgment [Doc. 75] also be denied. Judge Wyrick further recommends that the parties be ordered to engage in a judicially hosted settlement conference within 90 days of the entry of this Order and, if no resolution is reached at any such conference, that the Court hold a scheduling conference to establish a new scheduling order. The ACLCP Defendants timely filed their objections to the R&R on August 7, 2026 [Doc. 170]. Defendant Philip Kassover filed a response to the ACLCP Defendants' objections [Doc. 171]. For the reasons that follow, the ACLCP Defendants' objections

[1] The ACLCP Defendants include Richard Sabella, SCP 2001 A-CSF-76 LLC, GCC Kingsport, LLC, and GCC Realty Company, LLC, ACLCP Kingsport, LLC, and Allerand Realty Holdings, LLC.

[Doc. 170] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 166], in whole.

## I. Background

The Court finds that the "Case Background" and "New York Case" sections contained in the R&R adequately detail the relevant factual background and procedural history in this case [*See* Doc. 166, pp. 1–6]. Given that no party has objected to these portions of the R&R, the Court incorporates them in part below:

> On January 31, 2024, Plaintiff, Tennessee CVS Pharmacy, LLC ("CVS") filed a Complaint for Interpleader against all defendants. In the Complaint, CVS states that it leases property in Kingsport, Tennessee, pursuant to the terms of a lease with SCP 2001 A-CSF-76 LLC ("SCP"). . . . While CVS made rental payments under the lease to Wells Fargo as the lender for SCP and its successors, following a merger and transfer of ownership interests, a dispute arose among Defendants as to who is legally entitled to receive CVS's rent payments. Defendant Sabella sent a letter to CVS stating that GCC Kingsport, LLC ("GCC") had been assigned ownership of SCP and that all communications should be sent to GCC. Shortly thereafter, Defendant Kassover sent CVS a letter stating that he was attorney-in-fact for GCC and that all communications should be sent to him. CVS filed this action to determine to whom it should deliver its monthly rent. . . .
>
> In response [to the ACLCP Defendants' discovery requests and motion for leave to file a cross-claim], Defendant Kassover filed a motion for extension, wherein he identified himself as attorney-in-fact for GCC Realty, LLC, and alerted the Court to parallel litigation in multiple other federal jurisdictions. The ACLCP Defendants responded and moved to compel discovery. Defendant Kassover filed a Reply to the responses to his First Motion for Extension, a Motion for Re-Argument, and a Second Motion for Extension. The recurring basis for Defendant Kassover's series of extension requests is both an underlying New York case and the numerous concurrent cases across multiple states and jurisdictions where very similar issues are being litigated. . . .
>
> In an attempt to disentangle the discovery and extension issues before the undersigned with those identified by Defendant Kassover pending in the New

York case, the Court ordered briefing on the main factual and legal issues presented in the New York Case.

**New York Case**

According to the ACLCP Defendants, in the New York case, Defendant Kassover obtained a $293,253.17 judgment against GCC Realty Company and was subsequently named attorney-in-fact ("AIF") of that company for the purposes of collecting and delivering the membership interests in it to the New York County Sheriff so the company could then be publicly auctioned. The proceeds from the auction were to be used to satisfy the judgment, including post-judgment interest. The brief filed by the ACLCP Defendants notes that the public auction never happened but does not provide any explanation as to why it did not. Notably, their version of the facts in the underlying matter fits on approximately one page, does not contain any pertinent dates, and only provides a conclusory depiction of the complexity. For example, they reference a "turnover motion" and subsequent order and state that "[n]othing in the court's order provided Kassover with any rights to [. . .] directly collect rents owed to GCC Realty Company or its subsidiaries [. . . .]. However, a September 2017 order from the New York Supreme Court ("2017 Turnover Order") on Defendant Kassover's turnover motion *did* direct GCC to "turnover, forthwith, to the New York County Sheriff for payment to Plaintiffs any cash GCC owns including rents or other lease payments paid or due to be paid to GCC or its Entities up to the amount of the Judgment plus post-judgment interest." While the 2017 Turnover Order did not provide Defendant Kassover the right to *directly* collect rents, because it did require GCC to turnover present and future rents and other lease payments paid or due to be paid, the ACLCP [Defendants'] version of the facts raises the Court's concerns about a sleight of hand.

The ACLCP Defendants further argue that the issues before this Court are both discrete and distinct from those pending in the New York case. They argue that the scope of the attorney-in-fact appointment and Defendant Kassover's creditor relationship is unrelated to the narrow issue of who Plaintiff should pay monthly rent to during the pendency of its lease.

Defendant Kassover's brief tells an entirely different story. Defendant Kassover argues that the issues to be decided in the New York Supreme Court action and this one are one and the same. In support of this argument, he points to the "Counterclaim for Declaratory Judgement and for Quiet Enjoyment," which he argues is essentially the same motion filed in both cases. Perhaps more importantly, Defendant Kassover provides some background and makes clear to the Court that his collection efforts have now spanned several decades and numerous jurisdictions. In his version of events,

> the judgment owed to him is closer to $3,300,000.00. More importantly to the case before this Court, Defendant Kassover alleges that Richard Sabella, acting through the ACLCP Defendants, has failed to comply with several New York Supreme Court orders, including the September 2017 Turnover Order, a November 2017 Enforcement Order, and a 2019 Order from the New York Supreme Court Appellate Division. As previously mentioned, part of the relief granted by the September 2017 Turnover Order required GCC to turn over to the New York County Sheriff any cash GCC held, along with present and future rents and lease payments due. The November 2017 Enforcement Order appoints Defendant Kassover "as attorney-in-fact for defendant/judgment debtor GCC Realty Company […] for the limited purpose of executing any and all documents on GCC's behalf to aid in Plaintiffs' efforts to enforce the Judgment." The 2019 New York Supreme Court Appellate Division Order affirms the 2017 Turnover Order.
>
> Defendant Kassover argues that Defendant Sabella's practice of violating the New York Supreme Court orders has resulted in Defendant Sabella illegally transferring the membership interests of GCC Realty Company out of New York's jurisdiction against the authority of Defendant Kassover's attorney-in-fact designation, as an attempt to evade paying the judgment owed to Defendant Kassover. And according to the New York Supreme Court orders submitted alongside Defendant Kassover's briefing, it appears that, at the very least, rents due to GCC Realty Company were to be turned over to the New York County Sherriff, and the attorney-in-fact designation may render purported transfers of membership rights that took place after the "turnover" to the Sheriff invalid.
>
> While the ACLCP Defendants argue that the attorney-in-fact appointment, and in turn any rights claimable under it, has long since expired, Defendant Kassover argues the opposite. Unfortunately for Plaintiff, this puts the scope of the attorney-in-fact appointment and the creditor relationship between Defendant Kassover and the ACLCP Defendants squarely in the middle of this case—and the pending dispositive motions . . . .

[Doc. 166, pp. 1–6 (internal citations and footnotes omitted)].

After considering the parties' arguments, Judge Wyrick recommended that both Sabella's motion for partial judgment on the pleadings [Docs. 76, 77] and the ACLCP Defendants' motion for summary judgment [Doc. 75] be denied [Doc. 166, p. 18]. Specifically, Judge Wyrick noted that CVS properly named Sabella as a defendant and that

he may file a disclaimer of interest should he wish to be dismissed [*Id.* at 9]. Additionally, Judge Wyrick determined that there are numerous issues of disputed material fact that preclude summary judgment at this stage [*Id.* at 18–19].

## II. Standard of Review

This Court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*, 806 F.2d at 637 (internal quotation marks omitted) (citation omitted). A general objection, in contrast to a specific objection, "has the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify each issue in the report and recommendation to which the litigant objects with sufficient clarity such that the Court can identify it, or else that issue is deemed waived. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). Furthermore, each objection to a magistrate judge's recommendation should explain the source of the error. *See Howard*, 932 F.2d at 509.

In addition, if "objections merely restate the arguments asserted" earlier by a party, "which were addressed by the magistrate judge's report and recommendation, the Court

may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)); *accord Thrower v. Montgomery*, 50 F. App'x 262, 264 (6th Cir. 2002) (affirming the district court's dismissal of the action because in part, plaintiff presented "no new arguments beyond those already addressed by the magistrate judge").

## III. Analysis

The ACLCP Defendants make three objections to the R&R and submit that no genuine dispute of material fact exists [Doc. 170]. First, the ACLCP Defendants object to the R&R's findings regarding the expiration of Kassover's attorney-in-fact authority [*Id.* at 2–3]. Second, the ACLCP Defendants object to the R&R's reliance on the 2017 Turnover Order in finding that the ACLCP Defendants may be required to turnover rent payments to the New York County Sheriff [*Id.* at 3–4]. Third, the ACLCP Defendants object to the R&R's determination that similar litigation pending in other forums further supports a finding of disputed material facts [*Id.* at 4–5]. The ACLCP Defendants also urge the Court to dismiss Sabella from the action "because the Complaint does not allege that Sabella, in his individual capacity, asserted any claim to the rent or the property" [*Id.* at 5].[2]

[2] As discussed *infra*, the Court does not find this to be a proper objection because the ACLCP Defendants do not present any new arguments that have not already been considered by Judge Wyrick.

In response, Kassover contends that the "threshold problem" is that the ACLCP Defendants "repeatedly ask the Court to treat their disputed successor-status, merger, rent-recipient, and New York enforcement-order conclusions as if they were undisputed facts" rather than facts that must still be proven [Doc. 171, p. 2]. Kassover argues that he "does not concede those facts" relied upon by the ACLCP Defendants in support of their motion for summary judgment and objections to the R&R [*Id.*]. Kassover ultimately asserts that the ACLCP Defendants oversimplify and mischaracterize the R&R's findings, noting that the R&R "identified additional unresolved issues" that preclude summary judgment [*Id.* at 3].

**A. Kassover's Attorney-in-Fact Authority**

As mentioned above, the ACLCP Defendants object to the R&R's findings as to whether the supposed expiration of Kassover's attorney-in-fact ("AIF") authority creates a genuine dispute of material fact [Doc. 170, pp. 2–3]. Specifically, the ACLCP Defendants argue that the November 2017 "Enforcement Order's operative text is clear" and, because Kassover's AIF authority expired on June 5, 2019, this conclusively resolves the matter [*Id.* at 3]. In the ACLCP Defendants' words, "the Orders say what they say, and they expired when they expired" [*Id.*].

In response, Kassover argues that a genuine dispute of material fact exists because he does not concede the expiration of his AIF authority [Doc. 171, p. 3]. Specifically, Kassover asserts that the New York Supreme Court's orders, along with applicable New York enforcement statutes, "preserve his priority and the enforcement mechanism directed to the New York County Sheriff" [*Id.*]. Kassover further contends that the R&R correctly

identified numerous disputed questions, including "what ownership interest, if any, is being held by the New York County Sheriff, whether the Sheriff has lost the power to conduct the auction, and whether lease payments in this action should be tendered to the Sheriff rather than to ACLCP" [*Id.* at 4]. Ultimately, Kassover maintains that the ACLCP Defendants err in "attempt[ing] to separate the AIF appointment from the Sheriff-sale and rent-turnover provisions" [*Id.*].

The Court will begin by quoting the relevant portion of the R&R at issue:

> Notably, under this Court's current reading of the orders that Defendant Kassover has submitted, which provide an incomplete picture, even if the AIF has expired, per the 2017 Turnover Order, the ACLCP Defendants are still required to turnover "rents or other lease payments paid or due to be paid to GCC or its Entities" to the NYCS. . . . However, given that there is an outstanding question regarding whether Defendant Kassover's AIF is still in effect and whether, even if [it] has expired, the ACLCP Defendants are required to turnover lease proceeds to the NYCS, it is not necessary for the Court to engage in a conflict of law analysis for the purpose of this MSJ because there are clearly other disputed issues of material fact.

[Doc. 166, p. 17 (internal citations and footnotes omitted)].

Before addressing these findings, the Court finds it pertinent to reiterate what is meant by "a genuine dispute of material fact." As stated in the R&R, "[a] fact is 'material' if it may affect the outcome of the case under the applicable substantive law, and an issue is 'genuine' if the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Koshani v. Barton*, 374 F. Supp. 3d 695, 701 (E.D. Tenn. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted). Further, "a party opposing a properly supported motion for summary judgment

may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). Finally, in ruling on a motion for summary judgment, courts perform a "threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

As noted above, while Judge Wyrick noted that Kassover's AIF authority purportedly expired on June 5, 2019 [*see* Doc. 166, pp. 13–14], she ultimately found that "there is an outstanding question regarding whether Defendant Kassover's AIF is still in effect" [*Id.* at 17]. In reaching this conclusion, Judge Wyrick considered other materials in the record, as permitted by Rule 56. *See* Fed. R. Civ. P. 56(c)(3). In turn, the Court will evaluate each of the reasons Judge Wyrick provided to support her recommendation.

First, Judge Wyrick noted that, by the ACLCP Defendants' own admission, the scope of Kassover's AIF appointment as well as the creditor relationship between Kassover and the ACLCP Defendants is currently being litigated in New York [Doc. 166, p. 14; *see also* Doc. 102, p. 3]. The R&R provides that the ACLCP Defendants filed a motion for summary judgment in the New York case "in part, to determine the scope of the AIF designation" [Doc. 166, p. 14]. That motion, which is still pending, directly cuts against the ACLCP Defendants' argument that Kassover's AIF authority has expired.

The ACLCP Defendants cite *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008) in arguing that "[i]nterpretation of the scope and duration of a court order is a question of law, not a question of fact that can survive summary judgment merely

because an opposing party characterizes the order differently" [Doc. 170, p. 2]. The ACLCP Defendants further argue that "Kassover's disagreement with an unambiguous order is legal argument, not evidence creating a genuine dispute of material fact" [*Id.* at 3]. Kassover accepts *Winget*'s "general proposition" "that the interpretation of an order is a legal question" but argues that the November 2017 Enforcement Order "does not eliminate [other] disputed record questions" [Doc. 171, p. 5]. The Court finds that, regardless of whether the language of the order at issue is "unambiguous," the duration and scope of Kassover's AIF authority are not, as evidenced by the pending New York litigation.

Second, Judge Wyrick noted the conflicting testimony of the defendants in a hearing held on November 21, 2023, in the United States Bankruptcy Court for the District of Delaware [Doc. 166, p. 16]. Kassover testified that the time limit imposed by the New York Supreme Court did not apply to the duration of his AIF appointment but rather only to his time for gathering and turning over GCC's membership interests to the sheriff [*Id.* (citing Doc. 75-2, p. 16)]. Kassover further testified that he timely complied with that obligation and that the auction had not yet occurred due to disputes over what properties the GCC entities owned, which in turn prevented the sheriff from moving forward [*Id.* (citing Doc. 75-2, pp. 16–17, 31)].[3] Opposing counsel, arguing on behalf of Sabella and others, stated

[3] Upon *sua sponte* review of the transcript from the bankruptcy court hearing, the Court notes that the R&R contains a minor typographical error, as Kassover's assertion of timely compliance is found on page 18 of Document Number 75-2 [Doc. 75-2, p. 18].

that the auction did not occur because Kassover's former counsel emailed the sheriff with direction not to move forward with the sale [*Id.* (citing Doc. 75-2, p. 46)].[4]

The Court finds, as the R&R does, that a genuine dispute of material fact exists as to Kassover's AIF authority. First, the scope of Kassover's AIF authority is both relevant and material because, as the R&R provides, it relates directly to the question at the heart of this matter, to whom CVS is required to remit its rent payments.[5] Second, as discussed *infra*, because the validity of the merger of SCP 2001A-CSF-76 LLC and ACLCP is disputed, whether Kassover still possesses authority to "execut[e] any and all documents on GCC's behalf to effectuate the turnover" [Doc. 105-5, p. 5] will clearly affect the outcome of the case. *See Koshani*, 374 F. Supp. 3d at 701 (citation omitted). Third, the evidence that the R&R relied upon reveals disputes that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. The Court thus agrees with the R&R's finding that "the question central to the Complaint, which the MSJ seeks to resolve, cannot be answered at this point without resolution as to the scope of the AIF from the New York court" [Doc. 166, p. 15].

For the reasons set forth above, the ACLCP Defendants' objections here are **OVERRULED**.

---

[4] The Court notes that the R&R's findings from the bankruptcy court hearing are based solely on the transcript, which was attached as an exhibit to the ACLCP Defendants' Motion for Summary Judgment [Doc. 75-2]. Neither the email referenced in Sabella's proffered testimony nor the ruling of the bankruptcy court were provided for the Court's consideration [Doc. 166, p. 16].

[5] The Court also agrees with the R&R's finding that the ACLCP Defendants' request for dismissal of the Complaint cannot be granted "because that would leave Plaintiff CVS, the initiator of this action, without an answer to the only question it raises in the litigation" [Doc. 166, p. 15].



Case 2:24-cv-00016-TAV-CRW Document 177 Filed 09/14/26 Page 11 of 17
PageID #: 1329

### B. Reliance on the 2017 Turnover Order

As discussed previously, the ACLCP Defendants' second objection is to the R&R's reliance on the 2017 Turnover Order, which they argue does not reach the rent at issue in this case [Doc. 170, p. 3]. Specifically, they assert that the R&R's "conclusion depends on an unarticulated and false premise: that the Tennessee CVS rent is 'cash GCC owns' or is currently 'paid or due to be paid to GCC or its Entities'" [*Id.*]. In support, the ACLCP Defendants first rely on the merger between SCP 2001A-CSF-76 LLC and ACLCP, which they contend makes ACLCP the current landlord [*Id.*]. The ACLCP Defendants also rely on their Answer, which states that "GCC Realty and GCC Kingsport do not claim an interest in Plaintiff's rent payments under the Lease; rather, all rent payments are due and payable to ACLCP" [*Id.*; *see also* Doc. 38, p. 2].

In response, Kassover argues that the ACLCP Defendants' "argument assumes the answer to the dispute" [Doc. 171, p. 5]. Kassover further submits that the ACLCP Defendants' reliance on their Answer "does not establish that ACLCP is entitled to the funds" [*Id.*]. Additionally, Kassover states that even if the Court resolves the sheriff or AIF issues in favor of the ACLCP Defendants, they "still must prove the validity and effect of its merger and successor chain before receiving final judgment and disbursement" [*Id.* at 6].

The Court again begins by quoting the relevant portion of the R&R:

> The Court further acknowledges the ACLCP Defendants' argu[ment] that even if Defendant Kassover successfully turned over the GCC ownership interest to the NYCS, his AIF designation terminated upon that turnover, and he no longer possesses the capacity to participate in this litigation as GCC's AIF. However, that issue is likewise disputed as demonstrated by Defendant Kassover's filings, including the pleadings from the New York state litigation.

> The 2017 Turnover Order, and the parties' obligations under it[,] predate Defendant Kassover's appointment as AIF, which was not ordered until the 2017 Enforcement Order entered several months after the 2017 Turnover Order. Additionally, while there is no dispute between the Defendants that the public auction to be conducted by the NYCS did not happen, and the ACLCP Defendants argue that it is too late for that sale to occur, they have submitted no documents that either abrogate their obligations under the 2017 Turnover Order or demonstrate the accuracy of this assertion. The Court is not in a position to determine whether the passage of time has dissolved the ACLCP Defendants' obligations under the 2017 Turnover Order and subsequent orders, or as noted above, what interests if any the NYCS holds, whether the sheriff has the power to liquidate that interest at this time via auction, and if that power still exists, whether lease payments in this action should be turned over to the sheriff to be included as part of any auction.

[Doc. 166, pp. 16–17 (internal citations omitted)]. The Court will again evaluate each of the reasons Judge Wyrick provided to support her recommendation.

First, Judge Wyrick relied on the New York Supreme Court orders in finding that "at the very least, rents due to GCC Realty Company were to be turned over to the New York County Sheriff, and [Kassover's AIF] designation may render purported transfers of membership rights that took place after the 'turnover' to the Sheriff invalid" [*Id.* at 5]. Notably, Judge Wyrick included the 2017 Turnover Order's finding that Sabella "appears to have outmaneuvered Plaintiffs by stripping GCC of cash then becoming a creditor of GCC's remaining assets" [*Id.* at n.14 (citing Doc. 105-3, p. 16, n.9)].

Second, Judge Wyrick noted that the parties' obligations under the 2017 Turnover Order, as well as the order itself, "predate Defendant Kassover's appointment as AIF" [Doc. 166, p. 17]. After finding that the defendants agree that the New York County Sheriff never held the public auction, Judge Wyrick noted that the ACLCP Defendants had "submitted no

documents that either abrogate their obligations under the 2017 Turnover Order or demonstrate the accuracy of [their] assertion" that it is too late for that sale to occur [*Id.*].

The Court observes that the ACLCP Defendants' argument above—that is, "the Orders say what they say" [Doc. 170, p. 3]—is unhelpful to them here. This is especially true in light of the 2017 Turnover Order's suggestion that Sabella intentionally moved assets around to avoid turning over any cash or rent owned by GCC [Doc. 166, p. 5 n.14 (citing Doc. 105-3, p. 16, n.9)]. As the R&R noted, however, the Court "is not in a position to determine whether the passage of time has dissolved the ACLCP Defendants' obligations under the 2017 Turnover Order" [Doc. 166, p. 17]. In performing only the "threshold inquiry" necessary for ruling on a summary judgment motion, the Court finds, as the R&R did, that the factual dispute as to whom CVS must direct its rent payments could "reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

For the reasons set forth above, the ACLCP Defendants' objections here are **OVERRULED**.

**C. Parallel Litigation**

As discussed previously, the ACLCP Defendants object to the R&R's finding that the existence of parallel litigation further supports findings of disputed material fact and, in turn, denial of summary judgment [Doc. 170, pp. 4–5]. Specifically, they argue that "[t]he mere pendency of related lawsuits cannot, as a matter of law, create a genuine dispute of material fact sufficient to defeat summary judgment" [*Id.* at 4]. The ACLCP Defendants cite *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986) in support of their proposition that "the nonmoving party must go beyond the pleadings and designate specific facts

showing a genuine issue for trial" [*Id.*]. They further contend that "[t]he R&R's reliance on parallel proceedings is particularly difficult to reconcile" with Judge Wyrick's earlier order, which called into question Kassover's ability to proceed *pro se* and stated that the present action "cannot be stayed indefinitely" because of the New York case [Doc. 170, p. 4; *see also* Doc. 165, pp. 2, 5].

In response, Kassover argues that the R&R did not rely merely on the existence of parallel litigation but rather specific record materials, including the New York orders, the parties' briefing ordered by Judge Wyrick in relation to the New York case, and the parties' filings related to the pending motions in this case [Doc. 171, p. 7]. Kassover further responds that the R&R is not inconsistent with Judge Wyrick's earlier order, which instructed him to file a notice clarifying the capacity in which he seeks to proceed in the suit rather than conclusively determining he cannot [*Id.*].[6] Finally, Kassover states that he does not seek an indefinite stay of this matter but only asks that the Court adopt Judge Wyrick's recommendation to deny the ACLCP Defendants' summary judgment motion [*Id.*].

The Court again quotes the relevant portion of the R&R:

> In short, there are multiple issues of disputed material fact that prohibit summary judgment at this juncture, including whether the AIF designation for Defendant Kassover is still in effect, and if it is, whether the scope of it permits him to participate in this action, and whether the ACLCP Defendants are the correct recipients of CVS's rental payments or whether, instead, the payments should be tendered to the NYCS. Moreover, the fact that the same issues are being litigated across multiple states among similar parties *further supports* this conclusion.

[6] The Court observes that Kassover timely complied with Judge Wyrick's order to file a notice clarifying the capacity in which he seeks to proceed in this action [Doc. 176]. The Court does not, however, find it necessary to consider his notice for purposes of ruling on the R&R.

[Doc. 166, pp. 17–18 (emphasis added)].

The Court finds that Judge Wyrick, after an exhaustive review of the record in this matter, properly identified numerous genuine disputes of material fact. The Court further observes that, only after a careful and comprehensive examination, did Judge Wyrick make the statement that the ACLCP Defendants have seemingly taken out of context. In isolating the R&R's statement that parallel litigation "further supports" the recommendation of denying the motion for summary judgment, the ACLCP Defendants disregard the R&R's preceding analysis. It is abundantly clear to the Court that the R&R did not rely solely on the existence of parallel litigation but rather instead, as Kassover contends, found materials related to that litigation to provide "additional context confirming that the ownership, control, Sheriff, and rent-recipient issues are not as simple or undisputed as the ACLCP Defendants' summary-judgment motion claimed" [Doc. 171, p. 7].

For the reasons set forth above, the ACLCP Defendants' objections here are **OVERRULED**.

**D. Sabella's Motion for Partial Judgment on the Pleadings**

Although the ACLCP Defendants do not directly object to Judge Wyrick's recommendation that Sabella's motion for partial judgment on the pleadings be dismissed, they do ask the Court to reject the recommendation [Doc. 170, p. 5]. Specifically, they argue that Sabella should be dismissed from this action "because the Complaint does not allege that [he], in his individual capacity, asserted any claim to the rent or the property" [*Id.*]. Their reasoning, however, "merely restate[s]" their earlier arguments [*see* Doc. 77, pp. 1–4], and restatement of prior arguments is not a proper objection to an R&R. *Modrall*,

2020 WL 2732399, at *2. Because the ACLCP Defendants presented "no new arguments beyond those already addressed" by Judge Wyrick [*see* Doc. 166, pp. 6–9], the Court "deem[s] those objections waived" and does not find it necessary to address Kassover's response. *Thrower v. Montgomery*, 50 F. App'x 262, 264 (6th Cir. 2002); *Modrall*, 2020 WL 2732399, at *2.

Accordingly, the ACLCP Defendants' objection here is **OVERRULED**.

## IV. Conclusion

After a careful review of the matter, the Court agrees with the magistrate judge's recommendations. For the reasons above, the ACLCP Defendants' objections [Doc. 170] are **OVERRULED**. Accordingly, the Court **ACCEPTS** and **ADOPTS** the R&R, in whole [Doc. 166]. The ACLCP Defendants' motion for summary judgment [Doc. 75] is **DENIED**, and Sabella's motion for partial judgment on the pleadings [Docs. 76, 77] is also **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE